cal_____

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Steven C. Scott,<br><br>　　　　　　　Plaintiff,<br>v.<br><br>State of California, et. al.,<br><br>　　　　　　　Defendants. | Civil No.05cv1743 DMS (AJB)<br><br>Report and Recommendation to Grant Defendants' Motion to Dismiss<br>[Doc. No.1 and 13] |

Plaintiff Steven C. Scott (hereinafter "Plaintiff") an inmate incarcerated at Soledad State prison proceeding *pro se,* filed a complaint pursuant to 42 U.S.C. § 1983. Plaintiff alleges the California Department of Corrections and Rehabilitation (hereinafter "CDCR"), Calipatria State Prison (hereinafter "Calipatria"), C. Butler, S. Garcia, R. Houston, and P. Preciado (collectively the "Defendants") violated his Eighth Amendment rights by failing to protect him from an attack by an unknown inmate on August 18, 2001 while Plaintiff was incarcerated at Calipatria, and that this attack resulted in the permanent disfigurement of his right arm. [Complaint at 3 and 6].

On March 30, 2006, Defendants, filed a Motion to Dismiss the complaint pursuant to Fed. R. Civ. P. 12(b) and 12(b)(6)[1] on the following grounds: (1) Plaintiff failed to comply with the Prison Litigation Reform Act of 1995's (hereinafter "PLRA") exhaustion requirement, (2) Plaintiff is time barred under the applicable statute of limitations, (3) Plaintiff failed to state an Eighth or Fourteenth

---

[1] All future reference to code sections will be to the Federal Rules unless otherwise stated.

Amendment claim, (4) Defendants are entitled to the qualified immunity, and (5) Defendants CDCR and Calpatria are immune from liability under the Eleventh Amendment based on sovereign immunity.  As of the date of this Report and Recommendation, Plaintiff has failed to file an Opposition to Defendants' Motion, despite two extensions of time granted by this Court. [Docket No. 14 and 17].

Pursuant to Local Civil Rule 72.3(f), this motion was referred to Judge Battaglia for hearing and issuance of a Report and Recommendation.  The hearing set for August 2, 2006 at 1:30 p.m. before Judge Battaglia was vacated, as this motion is appropriate for submission on the papers and without oral argument pursuant to Local Rule 7.1(d)(1).  For the reasons set forth herein, it is recommended that Defendants' Motion to Dismiss be **GRANTED**.

### *Relevant Factual History*

Plaintiff alleges that on August 18, 2001, Defendants failed to protect him from an assault by an inmate at Calipatria in violation of his rights under the Eighth Amendment. [Complaint at 3].  The following are the factual allegations leading to the assault:

Plaintiff contends that a Hispanic inmate informed Defendant Sergeant Preciado, that Plaintiff's life was in danger due to an unpaid drug debt.  As a result, on December 1, 2000, Sergeant Preciado escorted Plaintiff to the program office to discuss the issue.  Plaintiff denied having any outstanding drug debt, but was confined for five days in quarters.  Two days later, Defendant Captain Butler, removed Plaintiff from the prison's general population and placed him in Administrative Segregation for 41 days while the threats were being investigated. [Complaint at 3].

On January 18, 2000, Defendant Warden Garcia informed Plaintiff an investigation had not substantiated any threats to Plaintiff's safety and ordered Plaintiff to be released to the general population.  Plaintiff requested to be released to Yard B, the same yard where he was previously housed.  Taking precautions, Warden Garcia told him "no, just in case," and placed Plaintiff in Yard A, where he had no known enemies. [Complaint at 3].

For reasons unexplained, Plaintiff was again placed in Administrative Segregation from May 7, 2001 until July 18, 2001.  On July 18, 2001, Defendant Assistant Warden Houston, informed Plaintiff that he would be released from Administrative Segregation to Yard B, because enemy concerns

prevented him from being released to Yards A or C. Plaintiff, acknowledges in his complaint that he had no enemy concerns in either Yards A or C. [Complaint at 3].

On August18, 2001, Plaintiff was stabbed/slashed by an unknown inmate in Yard B. [Complaint at 3]. Plaintiff sustained injuries to his right arm and hand, and alleges that he now suffers from limited use of his right arm. [Complaint at 6 and 8].

On August 21, 2001, Defendant Butler approved Plaintiff's placement in a double cell with a Caucasian prisoner. Plaintiff attributes this placement to the assumption that Defendant Butler must have thought that Plaintiff was attacked by a Hispanic inmate as a result of the prior unsubstantiated threat, even though the ethnicity of his attacker was never determined. [Complaint at 3].

In November of 2001, Plaintiff notified Defendant Houston that none of the individuals on his 812 enemy list were in either yards A or C, so Defendant Houston released Plaintiff to Yard A while Plaintiff's transfer to another prison was pending. [Complaint at 3].

On January 14, 2002, Plaintiff's father passed away, causing Plaintiff to grieve. [Complaint at 6].

### *Standard of Review*

**I.      12(b)(6) - Motion To Dismiss**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims in the complaint. A claim can only be dismissed if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984). The court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to the plaintiff. *N.L. Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986); *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

Where a plaintiff appears *pro se* in a civil rights case, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *Karim-Panahi v. Los Angeles Police Dep't.*, 839 F.2d 621, 623 (9th Cir. 1988). The rule of liberal construction is "particularly important in civil rights cases." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). In giving liberal interpretation to a *pro se* civil rights complaint, however, the court may not "supply essential elements of the claim that

were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Id.*, (citing *Johnson v. Wells*, 566 F.2d 1016 (5th Cir. 1978); *Kennedy v. H & M Landing, Inc.*, 529 F.2d 987 (9th Cir. 1976)); *see also Keker v. Procunier*, 398 F. Supp. 756, 766 (E.D. Cal.1975).

## II.     42 U.S.C. § 1983

Section 1983 provides, in pertinent part, that "every person who, under color of any statute of any state . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983.  A person "subjects" another to the deprivation of a constitutional right, within the meaning of §1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of a constitutional right. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)(citing *Sims v. Adams*, 537 F.2d 829 (5th Cir. 1976).)

In order to state a cause of action under §1983, the plaintiff is required to show (1) a violation of rights protected by the Constitution or created by federal statute, that was (2) proximately caused by defendants acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991); *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) (*en banc*)(stating that §1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights.")  In other words, the plaintiff must show that the defendants, acting under color of law, had personal involvement with the incidents which caused the constitutional injury. *Milton v. Nelson*, 527 F.2d 1158, 1159 (9th Cir. 1975).

"Supervisory personnel whose personal involvement is not alleged may *not* be held responsible for the acts of their subordinates." *Id*. (emphasis added).  A vicarious liability theory is unavailable in § 1983 actions. *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).  Therefore, a supervisor may only be liable for the actions of his subordinates if he or she is personally involved in the constitutional deprivation or there is a sufficient causal connection between the supervisor's wrongful conduct and the

constitutional violation. *Id.* Supervisory liability must be based on more than the mere right to control one's employees. *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658, 694, n.58 (1978).
/////

### *Discussion*

Plaintiff states in his complaint that Defendants failed to protect him from an inmate attack in violation of his Eighth Amendment rights Defendants move to dismiss Plaintiff's complaint on the grounds that: (1) Plaintiff failed to comply with the PLRA exhaustion requirement, (2) Plaintiff is time barred under the applicable statute of limitations, (3) Plaintiff failed to state an Eighth or Fourteenth Amendment claim, (4) Defendants are entitled to the qualified immunity, and (5) Defendants CDCR and Calipatria are immune from liability under the Eleventh Amendment based on sovereign immunity.

**I.       Failure to Exhaust Administrative Remedies**

Failure to exhaust administrative remedies is an affirmative defense rather than a pleading requirement. The defendant has the burden of raising and proving the prisoner's failure to exhaust via an unenumerated motion to dismiss under Rule 12(b). *Wyatt v. Terhune*, 315 F.3d 1108, 1119-20 (9th Cir. 2003)(citing *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368 (9th Cir.1998) (*per curium*).) In deciding a motion to dismiss for a failure to exhaust administrative remedies, the court may look beyond the pleadings and decide disputed issues of fact. *See Ritza*, 837 F.2d at 369. If the district court concludes that the prisoner has not exhausted administrative remedies, the proper remedy is dismissal of the claim without prejudice. *Wyatt*, 315 F.3d at 1120; *see Ritza* 837 F.2d at 368 n.3. A prisoner's concession that he failed to exhaust administrative remedies is a valid ground for dismissal, so long as no exception to exhaustion applies. *Wyatt,* 315 F.3d at 1120.

The PLRA amended 42 U.S.C. § 1997e(a) to provide that "no action shall be brought with respect to prison conditions under § 1983, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement applies to all prisoner suits relating to prison life. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). As such, exhaustion is no longer left to the discretion of the district courts, but is mandatory. *See Woodford v. Ngo,* 126 S. Ct. 2378, 2384 (2006)(citing *Booth v. Churner*, 532 U.S. 731, 739 (2001).) Prisoners must exhaust all available remedies, not just those that

meet federal standards. Such remedies need not be plain, speedy, and effective. *Porter v. Nussle*, 534 U.S.516, 524 (2002).

/////

/////

In *Woodford v. Ngo*, the U.S. Supreme Court construed § 1997(e) to require proper exhaustion, whereby a prisoner must complete the administrative review process[2] in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court, as being the most consistent with the general purpose of the PLRA. *Woodford v. Ngo*, 126 S.Ct at 2384. The Supreme Court specifically rejected interpretation of § 1997a(e) as meaning that a prisoner may not bring suit in federal court until administrative remedies are no longer available, regardless of the reason for unavailable. *Id.*

In the instant case, Defendants moved to dismiss Plaintiff's claims because, Plaintiff, by his own admission in the complaint, did not initiate *any* administrative grievance procedure prior to filing suit. [Defendant's Memorandum at 3]. Plaintiff concedes that he did not exhaust administrative relief by filing a CDC 602 Grievance Form, but argues that the exhaustion requirement should be excused because he suffered an injury to his arm for four to six months after the attack, and because he was grieving his father's death, who passed away on January 14, 2002. [Complaint at 6]. However, despite Plaintiff's explanation for why he failed to file a timely Form 602, the Court notes that Plaintiff states that he never filed any Form 602 at all. Furthermore, Plaintiff never sought an extension of time in which to do so. [Complaint at 6]. For the reasons set forth above, Plaintiff's concession of non-exhaustion is a valid ground for dismissal. *Wyatt,* 315 F.3d at 1120. As such, Plaintiff's argument for not seeking administrative relief must be rejected, because, courts should not read futility or other exceptions into section 1997e(a). *Booth*, 532 U.S. at 741 n.6. Plaintiff's failure to file a Form 602

---

[2] In California, the administrative review process for the California Department of Corrections comprises an administrative grievance system for prisoner complaints, in which "any inmate or parolee under the department's jurisdiction may appeal any departmental decision, action, condition, or policy which they can reasonably demonstrate as having an adverse effect upon their welfare." Cal. Code Regs., tit. 15 § 3084, *et seq*., at 3084.1(a). Four levels of appeal are involved: (1) informal resolution, (2) formal written appeal on a CDC 602 Grievance Form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of California Department of Corrections, whose final decision concludes the administrative process. *Barry v. Ratelle*, 985 F. Supp. 1235, 1237-38 (S.D. Cal. 1997) (citing Cal. Code Regs. tit 15 § 3084.5 (2006).)

grievance is not an established exception to exhaustion and therefore it is recommended that Defendants' Motion to Dismiss the complaint for failure to exhaust administrative remedies be **GRANTED**.

## II. Statute of Limitations

Defendants contend that the Complaint should be dismissed because the claims contained therein are barred by the applicable statute of limitations. Actions brought pursuant to § 1983 are governed by the forum state's statute of limitations for personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 269 (1985); *Knox v. Davis*, 260 F.3d 1009, 1012 (9th Cir. 2001). In California, the statute of limitations for personal injury actions[3] was increased from one to two years effective January 1, 2003, however, this extension does not apply retroactively, except as to victims of the September 11, 2001 terrorist attacks. *Maldonado v. Harris*, 370 F.3d 945, 954-55 (9th Cir. 2004). As a result, this extension of the limitations period would apply only to claims in which the former one-year statute of limitations had not yet expired at the time of the extension's enactment. *Id.; see also Douglas Aircraft Co., Inc. v. Cranston*, 58 Cal. 2d 462, 467 (1962).

Under federal law,[4] a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001); *Two Rivers v. Lewis*, 174 F.3d 987, 992 (9th Cir. 1999). Here, Plaintiff's cause of action accrued on August 18, 2001, when he was attacked by an unknown inmate. [Complaint at 3]. Defendants contend that even if the Plaintiff was entitled to the benefit of the extension of the statute of limitations for personal injury claims (which arguably he is not), and Plaintiff was given the benefit of statutory tolling for the maximum period of two years under California law because he was incarcerated,[5] the statute of limitations would have expired on August 18, 2005. Plaintiff did not file the instant complaint in this court until September 8, 2005, after the statute of limitations had expired. Since the absolute latest date

---

[3] California Code of Civil Procedure Section 335.1.

[4] *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153-54 (9th Cir. 2000)(Although state law determines the statute of limitations period, federal law determines when a civil rights claim accrues.).

[5] In actions where federal courts borrow the state statute of limitations, federal courts will apply the forum state's equitable tolling statute when not inconsistent with federal law. *See Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999). In California, prisoners serving a criminal sentence of less than life imprisonment are eligible for a maximum of a two-year tolling of the statute of limitations based on the disability of imprisonment. Cal. Civ. Proc. Code §§ 351.1 and 352.1(a).

by which Plaintiff could have file his claim was August 18, 2005 under California's statute of limitations, and Plaintiff failed to file the instant action until September 8, 2005, the Court finds Plaintiff's claims to be untimely and barred by the statute of limitations. Cal. Civ. Proc. Code § 335.1 and § 352.1(a). Therefore, the Court recommends that the Defendant's Motion to Dismiss because claims are time barred be **GRANTED**.

### III.     Eighth Amendment Failure to Protect Claim

Plaintiff contends that the named defendants (Preciado, Butler, Garcia, and Houston) acted in a manner that violated his Eighth Amendment rights against cruel and unusual punishment. Defendant's moved to dismiss this claim under Rule 12(b)(6) claiming that Plaintiff has not pled sufficient facts to raise an Eighth Amendment claim.

The Eighth Amendment's prohibition against cruel and unusual punishment requires that prison officials take reasonable measures to provide for the safety of inmates. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). In particular, officials have the duty to protect inmates from violence at the hands of other inmates. *Farmer*, 511 U.S. at 833 (citing *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). However, not every injury suffered by one prisoner at the hands of another translates into constitutional liability. *Farmer*, 511 U.S. at 833.

A prison official violates the Eighth Amendment for failure to protect an inmate only when two requirement are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's safety. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 302-03. Deliberate indifference exists if the official "knew of the risk and that the official inferred that substantial harm might result from the risk." *Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995). Proof of this state of mind does not require a demonstration of an express intent to cause harm, by either action or inaction, on the part of the official, but it requires more than proof of mere negligence. *Farmer*, 511 U.S. at 835; *see Daniels v. Williams*, 474 U.S. 327, 328 (1986). A demonstration of reckless intent is required for a defendant's failure to protect to become a constitutional matter. The official must have been conscious of a substantial risk to the plaintiff and acted or failed to act upon

that risk in a way that brought serious harm to the plaintiff. *Farmer*, 511 U.S. at 841-42.  Even if an inmate demonstrates that prison officials actually knew of a substantial risk to the inmate's health or safety, these officials are not deliberately indifferent if they responded reasonably to the risk, even if the harm was ultimately not averted. *Farmer*, 511 U.S. at 844.  However, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a fact-finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 840-41.

As previously stated, a vicarious liability theory is unavailable in § 1983 actions. *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).  Therefore, each named defendant must be examined individually to determine whether the Plaintiff has plead facts sufficient to show that the defendant's actions violated the Plaintiff's Eighth Amendment rights.

### A.     *Defendant Preciado*

Defendant Preciado, learned from a Hispanic inmate that Plaintiff's life was in danger due to an unpaid drug debt.  As a result, on December 1, 2000, Preciado escorted Plaintiff to the program office to discuss the issue.  Plaintiff denied having any outstanding drug debt, but was confined for five days in quarters. [Complaint at 3].

From this factual scenario, it is apparent that Preciado was aware of a threat to the health of the Plaintiff.  However, Preciado, acting in the Plaintiff's interest, removed the Plaintiff from the area of danger and began an investigation into the veracity of the information.  The actions of Preciado do not show deliberate indifference to the knowledge of a possible threat, rather, Preciado's actions are reasonable and were in a manner aimed to preserve Plaintiff's health and safety.  Therefore, Defendant Preciado's actions did not violate Plaintiff's Eighth Amendment rights.

The facts pled by the Plaintiff are not sufficient to raise a claim that Defendant Preciado violated his Eighth Amendment rights.  As discussed above, the factual allegations support a finding that no such violation occurred and therefore Defendant's Motion to Dismiss under Rule 12(b)(6) should be **GRANTED** as to Defendant Preciado.

### B. *Defendant Butler*

After Plaintiff had been removed from the general population by Defendant Preciado, he spent five days in quarters  Thereafter, Defendant Butler placed Plaintiff in Administrative Segregation for the next 41 days while the investigation continued.  After the attack on the Plaintiff, Defendant Butler placed Plaintiff in a cell with a Caucasian inmate.  Plaintiff alleges that by being placed with a Caucasian inmate shows that Defendant Butler believed that a Hispanic inmate was the perpetrator of the attack. [Complaint at 3].

While an investigation into the threat was pending, Defendant Butler removed Plaintiff from the general population, thereby eliminating the potential that the threat could be realized.  It was only after the investigation had concluded was Plaintiff placed into a different prison yard, where no threat was known.  Defendant Butler did not show deliberate indifference towards the knowledge of a threat.  Defendant Butler, eliminated the Plaintiff's threat until an investigation was completed and where it was found that Plaintiff would be safe.  Much like Defendant Preciado, the actions of Defendant Butler show diligence in protecting the health and safety of the Plaintiff.

Furthermore, the fact that Defendant Butler placed the Plaintiff with a Caucasian inmate after the attack does not show indifference or knowledge that a threat existed. Plaintiff's contends that the placement shows that Defendant Butler was aware of the attackers ethnic origin, an unsupported assumption.  However, if taken as true, the placement shows that Defendant Butler in placing the Plaintiff with a non-Hispanic inmate was in effect furthering the protection of the Plaintiff by ensuring that a potential attacker was not paired with the Plaintiff.  By acting reasonably and with diligence Defendant Butler's actions do not constitute a violation of Plaintiff's Eighth Amendment rights.

The facts pled by the Plaintiff are not sufficient to raise a claim that Defendant Butler violated his Eighth Amendment rights.  As discussed above, the factual allegations support a finding that no such violation occurred and therefore Defendant's Motion to Dismiss under Rule 12(b)(6) should be **GRANTED** as to Defendant Butler.

### C. *Defendant Garcia*

After the investigation into the threat to the Plaintiff, Defendant Garcia informed Plaintiff that the threat was unsubstantiated.  Thereafter, Plaintiff requested to return to the yard where he was housed

when he received the threat. Defendant Garcia, answered, "no, just in case," and moved the Plaintiff into a yard where no threats were known. [Complaint at 3].

Defendant Garcia's actions show that she took reasonable steps to ensure the safety of the Plaintiff. She investigated a threat and even when it was unsubstantiated, she still did not place the Plaintiff the area where the threat originated to ensure his safety, even after Plaintiff had requested a return to that area. Defendant Garcia did not act with deliberate indifference towards the Plaintiff, and therefore Defendant Garcia's actions have not violated the Plaintiff's Eighth Amendment rights.

The facts pled by the Plaintiff are not sufficient to raise a claim that Defendant Garcia violated his Eighth Amendment rights. As discussed above, the factual allegations support a finding that no such violation occurred and therefore Defendant's Motion to Dismiss under Rule 12(b)(6) should be **GRANTED** as to Defendant Garcia.

### D.     *Defendant Houston*

Plaintiff's allegations against Defendant Houston occurred after the attack on the Plaintiff. In November of 2001, Plaintiff notified Defendant Houston that none of the individuals on his 812 enemy list were in either Yards A or C, so Defendant Houston released Plaintiff to Yard A while Plaintiff's transfer to another prison was pending. [Complaint at 3].

By placing Plaintiff in a yard where by Plaintiff's own admission, he had no enemies, does not show deliberate indifference towards the health and safety of the Plaintiff. Rather, the factual allegation shows diligence by Defendant Houston to ensure the health and safety of the Plaintiff, and therefore, no Eighth Amendment violation has occurred by the actions.

The facts pled by the Plaintiff are not sufficient to raise a claim that Defendant Houston violated his Eighth Amendment rights. As discussed above, the factual allegations support a finding that no such violation occurred and therefore Defendant's Motion to Dismiss under Rule 12(b)(6) should be **GRANTED** as to Defendant Houston.

### E.     *Conclusion*

In conclusion, the Plaintiff has not met his burden of pleading facts sufficient to overcome a motion to dismiss brought under Rule 12(b)(6). The factual allegations plead against the named defendants show no violation of Plaintiff's Eighth Amendment right and therefore raise no claim for

which relief may be granted.  It is recommended that Defendant's Motion to Dismiss under Rule 12(b)(6) be **GRANTED**.

### IV.     Fourteenth Amendment Due Process Claim

In his complaint, Plaintiff raises the issue of a Due Process violation, by stating, "Due Process?" under section C. Causes of Action as to count 1, where he also states his Eighth Amendment claim by stating, "freedom from cruel and unusual punishment." [Complaint at 3].  Defendants did not move to dismiss the Due Process claim, however, Plaintiff coupled this claim within his Eighth Amendment allegations.  Therefore, the Court will address the claim under Defendant's Motion to Dismiss under Rule 12(b)(6).

Prison officials must "take reasonable measures to guarantee the safety of . . . inmates." *Hudson*, 468 U.S. at 526-27. A convicted prisoner's liberty interests are protected by the due process clause and the state's failure to protect such persons against assaults results in a constitutional violation when that failure constitutes deliberate indifference to their safety. *Daniels*, 474 U.S. at 331; *Redman v. County of San Diego*, 942 F.2d 1435, 1440 n.7 (9th Cir. 1991).  The Fourteenth Amendment, like the Eighth Amendment, "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101 (1958).  To this end, the due process clause is not violated so long as the government conduct does not amount to "an unnecessary and wanton infliction of pain" or is not "'repugnant to the conscience of mankind.'" *Redman*, 942 F.2d at 1441, (quoting *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).) While protection against governmental arbitrariness is at the core of due process, only the most egregious executive action can be said to be "arbitrary in the constitutional sense." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)(quoting *Collins v. Harker Heights*, 503 U.S. 115, 129 (1992).)  The cognizable level of executive abuse of power is that conduct that "shocks the conscience and violates the decencies of civilized conduct." *County of Sacramento*, 523 U.S. at 846(quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952).)  The due process clause "is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels*, 474 U.S. at 328 (emphasis in original); *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990); *Berman v. City of Daly City*, 21 Cal. App. 4th 276,

288 (1993) (negligence, gross negligence, or even bad judgment is not sufficient to amount to a civil rights violation; conduct which "shocks the conscience" is required).

Unlike the "deliberate indifference" standard required under *Farmer's* Eighth Amendment analysis, the Ninth Circuit does not require officials to have a subjective awareness of the risk of harm in order to be deemed "recklessly" or "deliberately" indifferent for purposes of claiming a substantive due process violation. *Neely v. Fienstein*, 50 F.3d 1502, 1508 (9th Cir. 1995); *see, e.g., Wood v. Ostrander*, 851 F.2d 1212, 1214 (9th Cir. 1988); *Fargo v. City of San Juan Bautista*, 857 F.2d 638, 640 (9th Cir. 1988). However, "if . . . officials know or should know of [an inmate's] particular vulnerability, then the Fourteenth Amendment imposes on them an obligation not to act with reckless indifference to that vulnerability." *Redman*, 942 F.2d at 1443; *Colburn v. Upper Darby Township*, 838 F.2d 663, 669 (3d Cir. 1988).

Plaintiff argues that Defendants violated the Fourteenth Amendment by failing to protect him from an attack by a fellow inmate. [Complaint at 3]. However, Defendants' conduct does not "shock[] the conscience" nor does it "violate[] the decencies of civilized conduct" because Defendants took reasonable measures to protect Plaintiff. *See County of Sacramento*, 523 U.S. at 846 (quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952).) As set forth above, Defendants took a series of steps to protect Plaintiff, including confining Plaintiff to quarters, subsequently removing him from the general population, and placing him in Administrative Segregation to protect him while the alleged threats were investigated. [Defendants Memorandum at 7]. In other words, Defendants took reasonable steps to guarantee Plaintiff's safety. *See Hudson*, 468 U.S. at 526-27. By taking precautions to ensure the Plaintiff was separated from the alleged threat, the Court finds that the Defendants' did not act with reckless indifference to the Plaintiff's health and safety. The Defendants' action were reasonable and there is no evidence to establish that Defendants knew or should have known that releasing Plaintiff to Yard B on July 18, 2001 posed a safety threat to Plaintiff. Therefore, Plaintiff has not pled facts sufficient to raise a claim under the Fourteenth Amendment.

**V.    Qualified Immunity**

Defendants assert the affirmative defense of qualified immunity. Qualified immunity entitles government officials to "an immunity from suit rather then a mere defense to liability; and like an

absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 475 U.S. 800, 818 (1982)(citations omitted).

Analysis of qualified immunity begins with the two step process set forth by the United States Supreme Court in *Saucier v. Katz*, 533 U.S. 194 (2001). Initially, the Court must determine whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the defendants' conduct violated a constitutional right. *Id.* at 201 (federal courts are not to assume the existence of a constitutional even if it is clear that the defendants would be entitled to qualified immunity). If the answer to that question is no, then the case must be dismissed as there is no valid cause of action. *Vance v. Barrett*, 345 F.3d 1083, 1088 (9th Cir. 2003). If the answer is yes, and the facts alleged show that defendants' conduct violated a constitutional right, the next step is to ask whether the constitutional right was clearly established and, if so, "whether it would be clear to a reasonable [person] that his conduct was unlawful in the situation he confronted." *See Saucier* 533 U.S. at 202. "Only if the answer is in the affirmative should we address the immunity issue." *Robinson v. Solano County*, 278 F.3d 1007, 1013 (9th Cir. 2002).

As discussed above, the Plaintiff failed to plead facts sufficient to support an Eighth Amendment violation by the defendants. Because the Court has found no violation of Plaintiff's Eighth or Four-teenth Amendment rights, the Court need not reach any issue regarding qualified immunity.

**VI.   Sovereign Immunity Under the Eleventh Amendment**

Defendants move to dismiss Plaintiff's claim against CDCR and Calipatria on the ground that the Eleventh Amendment prohibits suits against a state or one of its agencies and § 1983 does not abrogate this immunity.

The Eleventh Amendment applies only to actions brought in federal court, not to actions initiated in state court. *Hilton v. South Carolina Pub. Rys. Comm'n*, 502 U.S. 197 (1991)(citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58,(1989).) The state need not be a named party defendant for the Eleventh Amendment to apply. *See Edelman v. Jordan*, 415 U.S. 651, 663. (1974)**.** "To qualify for

Eleventh Amendment immunity, a state instrumentality must be found to be an 'arm of the state,' and therefore 'one of the United States.'" *Dougherty v. Golden Gate Bridge*, 31 F.Supp.2d 724, 727 (N.D. Cal. 1998)(citing *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425 (1997)(quoting *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977).)

"If a state or 'arm of the state' does enjoy Eleventh Amendment immunity, no actions can be brought against it in federal court unless the immunity is overcome in one of two ways: (1) by Congressional abrogation of the immunity; or (2) by voluntary waiver by the state." *Dougherty* 31 F. Supp at 727 (citing *Welch v. Texas Dept. of Highways and Pub. Transp.*, 483 U.S. 468 (1987).) "Congress did not intend, in enacting § 1983, to abrogate the eleventh amendment's traditional jurisdictional bar." *Leer v. Murphy*, 844 F. 2d 628, 632 (9th Cir. 1988)(citing *Quern v. Jordan*, 440 U.S. 332, 341-45 (1988).) As such, §1983 claims against states are considered to be legally frivolous. *See Jackson v. Arizona*, 885 F.2d 639, 641 (9th Cir. 1989).

California's consent to be sued is limited by statute under the California Tort Claims Act (hereinafter "CTCA"). Cal. Gov't Code §§ 810, et seq. "The [CTCA] does not appear to contain a waiver of immunity which extends further than the California state courts." *Riggle v. California*, 577 F.2d 579, 585 (9th Cir. 1978).

As "arms" of the state, CDCR and Calipatria are entities[6] shielded from liability under the Eleventh Amendment. *Will*, 491 U.S. at 70; *Mitchell v. Los Angeles Comty. Coll. Dist.*, 861 F.2d 198, 201 (9th Cir. 1988). Furthermore, the state of California has not waived consent as required by the CTCA. As such, the Court finds Plaintiff's claims against the CDCR and Calipatria are prohibited under the Eleventh Amendment and recommends that Defendants' Motion to Dismiss the State of California, by and through the CDCR and Calipatria be **GRANTED**.

**VII.   Conclusion**

In conclusion, Plaintiff has failed to exhaust all administrative remedies as required by *Woodford v. Ngo,* 126 S. Ct. 2378 (2006). Second, Plaintiff failed to file his compliant within the applicable statute of limitations. Third, in his complaint, Plaintiff has not raised a sufficient factual basis to support a claim that the defendants' actions surmounted to a violation of his Eighth or Fourteenth Amendment

---

[6]The CDCR and Calipatria are state run facilities and therefore they are state entities.

rights.  Fourth, by failing to raise a Constitutional violation, the affirmative defense of qualified immunity raised by the defendants is moot. Fifth, the CDCR and Calipatria are immune from liability under the Eleventh Amendment as they are state entities and the State of California has not waived liability.  Therefore, the Court recommends that the Defendant's Motion to Dismiss should be **GRANTED**.

### *Conclusion*

For the reasons set forth above, it is recommended that Defendants' Motion to Dismiss under rule 12(b) and 12(b)(6) be **GRANTED**. This report and recommendation will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) (1988) and Fed. R. Civ. P. 72(b).  Plaintiff may file with the Court written objections to this Report and Recommendation on or before *October 13, 2006*. Any such written objections should be captioned "Objections to Report and Recommendation" and a copy must be served on all parties.  Any reply to the objections shall be served and filed on or before *October 27, 2006*.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of this Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

DATED: September 22, 2006

Hon. Anthony J. Battaglia
U.S. Magistrate Judge
United States District Court